# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 17-2345

STENSON FEARS, JR., APPELLANT,

V.

ROBERT L. WILKIE,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued July 16, 2019                                    Decided August 12, 2019)

*Brian K. Lewis*, of Woodbury, Minnesota, for the appellant.

*James L. Heiberg*, with whom *James M. Byrne*, General Counsel; *Mary Ann Flynn*, Chief Counsel; and *Emily C. Purcell*, Acting Deputy Chief Counsel, all of Washington, D.C., were on the brief for the appellee.

Before SCHOELEN, ALLEN, and TOTH, *Judges*.

ALLEN, *Judge*: Generally, veterans cannot challenge VA's selection of an examiner before this Court in the first instance, but rather must initially do so before VA.[1] But in *Wise v. Shinseki*, this Court held that there are times when VA is required to address an examiner's competence, even without a claimant's objection.[2] This appeal principally asks us to consider the scope of the exception recognized in *Wise* and where this case fits within it.

While VA was adjudicating the appellant's claim for service connection for hepatitis, he was examined by a Dr. Wilhelm, a VA physician who had been previously discharged from an Army medical residency program.[3] The examiner appealed his discharge from the Army program, but the United States District Court for the District of Columbia affirmed the Army's decision.[4] The appellant argues, among other things, that this prior judicial proceeding, combined with news

---

[1] *See Francway v. Wilkie,* No. 2018-2136, __ F.3d __, 2019 WL 3294051 (Fed. Cir. July 23, 2019); *Parks v. Shinseki*, 716 F.3d 581 (Fed. Cir. 2013); *Sickels v. Shinseki*, 643 F.3d 1362 (Fed. Cir. 2011); *Bastien v. Shinseki*, 599 F.3d 1301 (Fed. Cir. 2010); *Rizzo v. Shinseki*, 580 F.3d 1288 (Fed. Cir. 2009).

[2] 26 Vet.App. 517 (2014).

[3] *See Wilhelm v. Caldera*, 90 F. Supp. 2d 3 (D.C. Dist. 2000), *aff'd,* 6 F. App'x 3 (D.C. Cir. 2001).

[4] *Id.*

articles regarding Dr. Wilhelm's possible role in the mishandling of examinations at a VA facility, raised the issue of Dr. Wilhelm's competence, excusing the appellant's admitted failure to challenge that competence before the Board. But because both that prior finding and the news articles the appellant cites were neither actually nor constructively before the Board, there was nothing to put the Board on notice of an issue concerning competence. Also because they were not in the administrative record, we cannot use them independently to forgive the appellant's failure to raise this issue. In sum, the *Wise* exception[5] is not restricted to the facts of that case, but the facts of this case fall squarely outside the exception. Thus, and because the appellant's remaining arguments are without merit, we will affirm the Board's decision.

## I. BACKGROUND

The appellant served the Nation honorably in the United States Navy from February 1976 to January 1980.[6] When he was in service, there was a hepatitis outbreak at his duty station.[7] In August 1976, he reported he had donated blood the previous month and been notified his blood sample possibly contained hepatitis.[8] Thereafter, he was tested for hepatitis.[9] Test results revealed no hepatitis.[10] The treating physician noted no known exposure to hepatitis, no symptoms, and that 6 months before, appellant had been given a gamma globulin shot, a shot meant to help him avoid contracting hepatitis.[11]

The only available service treatment records reflect that in February 1977 and November 1979 the appellant was treated for a different disease.[12] Nonetheless, he claims VA treated him for hepatitis in 1988,[13] but the only records available from that time show treatment for mild

---

[5] We use the term "*Wise* exception" where a claimant before the Board is relieved of his or her obligation to object to an expert's competence and may raise the matter for the first time before the Court on appeal.

[6] Record (R.) at 273, 795.

[7] R. at 750.

[8] R. at 436.

[9] *Id.*

[10] R. at 437.

[11] R. at 436.

[12] *See* R. at 439, 441.

[13] R. at 750.

depression and a history of cocaine dependence.[14] VA unsuccessfully attempted to locate records of the appellant's purported hepatitis treatment, formally finding them unavailable in June 2011.[15]

In December 2009, the appellant sought service connection for hepatitis, bilateral hearing loss, tinnitus, and a bilateral shin condition.[16] VA denied these claims in 2010.[17] The appellant timely disagreed in December 2010, and VA continued its denial in a February 2011 Statement of the Case.[18] April and July 2011 Supplemental Statements of the Case continued to deny the appellant's hepatitis claim.[19]

The appellant testified before the Board in June 2011, reporting he had illegally used drugs both during and after service.[20] He also stated that, while in service, he was inoculated through an air gun and had unprotected sex.[21]

The Board found a January 2011 VA medical examination inadequate in May 2014, remanding the claim with instructions for a new medical opinion "by an appropriate examiner (preferably a hepatologist)" addressing the etiology of the appellant's hepatitis.[22] In July 2014, Dr. Wilhelm, a VA examiner, provided the requested opinion.[23] He concluded the appellant's hepatitis was most likely caused by his postservice drug use from 1986 to 1991, rather than from his in-service marijuana use or risky sexual behavior.[24] The appellant's hepatitis-like symptoms in 1976 predated his risky sexual behavior, and thus, the examiner explained, "temporality is lacking in establishing a causal nexus between his documented 'risky sexual behavior' in 1977 and 1979 and his first claims of" hepatitis-attributed symptoms in 1976.[25] The examiner also noted that, per

---

[14] *See* R. at 699-700.

[15] R. at 608.

[16] *See* R. at 723-42.

[17] R. at 694-98.

[18] R. at 639-66, 688.

[19] R. at 614-20, 601-07.

[20] R. at 538-40.

[21] R. at 533-38.

[22] R. at 506-08.

[23] R. at 388-90.

[24] R. at 388.

[25] R. at 388-89.

medical literature, the use of air guns in inoculation is not highly correlated with hepatitis transmission.[26]

Dr. Wilhelm provided an addendum opinion in December 2014, this time also considering service treatment records.[27] He still reached the same opinion, noting the appellant's in-service lab results did not show hepatitis and opining that the possible hepatitis detected in the appellant's 1976 blood donation may have been caused by the gamma globulin shot he had been given to help prevent the disease.[28]

On April 6, 2017, the Board denied the appellant's claim, relying on Dr. Wilhelm's July 2014 and December 2014 medical opinions.[29] The Board also found the regional office (RO) had substantially complied with its May 2014 remand order that a new medical opinion be provided "by an appropriate examiner (preferably a hepatologist)," even though Dr. Wilhelm was not a hepatologist.[30] This appeal followed.

## II. ANALYSIS

The appellant principally argues the Board clearly erred in denying service connection because, under the doctrine of "offensive collateral estoppel," VA was precluded from relying on Dr. Wilhelm's medical opinion because of the examiner's litigation history.[31] Yet that same litigation history is what the appellant claims forgives his failure to object to Dr. Wilhelm's competence before the Agency. Though he does not expressly challenge the adequacy of Dr. Wilhelm's medical opinion in his principal brief, in his reply brief the appellant did challenge the adequacy of Dr. Wilhelm's rationale.[32] The appellant's failure to raise the adequacy of the examination in his primary brief is fatal, as the Court will not entertain piecemeal litigation.[33] Also,

---

[26] R. at 389.

[27] *See* R. at 214-15.

[28] *Id.*

[29] R. at 1-12.

[30] R. at 4-5.

[31] "Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Allen v. McCurry*, 449 U.S. 90, 94 (1980).

[32] Appellant's Reply Brief at 12-13.

[33] "Advancing different arguments at successive stages of the appellate process does not serve the interests of the parties or the Court. Such a practice hinders the decision-making process and raise the undesirable specter of piecemeal

at oral argument, the appellant's counsel asserted that the adequacy of Dr. Wilhelm's rationale was part of his competence argument.[34] But challenging the competence of an examiner and challenging the adequacy of an examination "are two separate inquiries."[35] Thus, the appellant has failed to raise a challenge to the adequacy of the opinion. He also argues VA failed its duty to assist him in locating certain records and, in doing so, violated a Board remand order. Finally, he asserts the Board impermissibly reversed a favorable factual finding purportedly made by the RO. The Secretary disagrees and urges the Court to affirm the Board's decision.

## A. The Legal Landscape

Before considering whether this case serves as an exception to the general rule that claimants must challenge a VA examiner's competence before the Agency before doing so here, we lay out the applicable legal framework.

The presumption of competence is rooted in in the presumption of regularity, which "provides that, in the absence of clear evidence to the contrary, the court will presume that public officers have properly discharged their official duties."[36] This presumption of regularity requires courts "to presume that what appears regular is regular."[37] And it shifts the burden to the party seeking to rebut the presumption "to show the contrary."[38] In this context, showing the contrary "requires nothing more than is required for veteran[-]claimants in other contexts—simply a requirement that the veteran raise the issue" before VA.[39] "Given that one part of the presumption of regularity is that the person selected by . . . VA is qualified by training, education, or experience in the particular field, the presumption can be overcome by showing the lack of those presumed qualifications."[40] Whether the presumption has been rebutted is inherently a question of fact the Court will review for clear error.[41] Under this clear-error standard, we may overturn the Board's

---

litigation." *Fugere v. Derwinski*, 1 Vet.App. 103, 105 (1990).

[34] *See* Oral Argument at 19:10-20:57, *Fears v. Wilkie*, U.S. Vet. App. No. 17-2345 (oral argument held July 16, 2019), https://www.uscourts.cavc.gov/documents/Fears17-2345.mp3.

[35] *Francway*, ___ F.3d at ___, 2019 WL 3294051, at *4.

[36] *Miley v. Principi*, 366 F.3d 1343, 1347 (Fed. Cir. 2004).

[37] *Butler v. Principi*, 244 F.3d 1337, 1340 (Fed. Cir. 2001).

[38] *Id.*

[39] *Francway*, ___ F.3d at ___, 2019 WL 3294051, at *3.

[40] *Parks*, 716 F.3d at 585.

[41] *See* 38 U.S.C. § 7261(a)(4); *Gilbert v. Derwinski*, 1 Vet.App. 49, 53 (1990).

finding only if there is no plausible basis in the record for the Board's decision and the Court is "left with the definite and firm conviction that" the Board's decision was in error.[42] Today, however, we address the scope of the *Wise* exception, a legal question distinct from the question whether the presumption of competence has been rebutted in a specific appeal. We review questions of law such as this without deference to the Board.[43] Moreover, the Board must provide a statement of the reasons or bases for all its material determinations of law and fact "adequate to enable a claimant to understand the precise basis for the Board's decision, as well as to facilitate review in this Court."[44]

We have never been called on to review whether there was sufficient evidence to rebut the presumption. Rather, our precedent has focused on cases where no objection to competence has been made below.

The presumption first found its way to this Court in its decision in *Cox v. Nicholson*.[45] There, the appellant argued the Board erred by not affirmatively establishing the qualifications of VA's chosen examiner before relying on the examiner's opinion.[46] But the Court held that VA was not required to affirmatively establish an examiner's qualifications absent "evidence . . . that would cast doubt on [the examiner's] competence and qualifications."[47] This was so, the Court explained, because "the Board is entitled to assume the competence of a VA examiner."[48] On its face, this is a simple rule. Nonetheless it has caused both this Court and the United States Court of Appeals for the Federal Circuit to spill a great deal of ink.

After *Cox*, the Federal Circuit decided *Rizzo*.[49] There, the court considered a challenge to a VA examiner's qualifications raised for the first time on appeal to this Court. The Federal Circuit, "adopt[ing] the reasoning of the Veterans Court in *Cox*," held that

---

[42] *Gilbert*, 1 Vet.App. at 53.

[43] *See Butts v. Brown*, 5 Vet.App. 532, 539 (1993) (en banc) (noting "the Court's longstanding practice of reviewing questions of law de novo without any deference to the [Board's] conclusions of law").

[44] *Allday v. Brown*, 7 Vet.App. 517, 527 (1995).

[45] 20 Vet.App. 563 (2007).

[46] *Id.* at 569.

[47] *Id.*

[48] *Id.*

[49] 580 F.3d at 1288.

[a]bsent some challenge to the expertise of a VA expert, this court perceives no statutory or other requirements that VA must present affirmative evidence of a physician's qualifications in every case as a precondition for the Board's reliance upon that physician's opinion. Indeed, where as here, the veteran does not challenge a VA medical expert's competence or qualifications before the Board, this court holds that VA need not affirmatively establish that expert's competency.[50]

The court also noted that "the record contains no evidence to call into question the competence of" VA's chosen examiner.[51] *Rizzo* thus reaffirmed this Court's holding in *Cox*.

The Federal Circuit again addressed what veterans must do to challenge a VA examiner's qualifications in *Bastien*.[52] There, the appellant requested information about a VA examiner's qualifications, did not challenge those qualifications before the Board, and then attempted to raise that argument for the first time on appeal before this Court.[53] The Federal Circuit held that "[a] request for information about an expert's qualifications . . . is not the same as a challenge to those qualifications." [54] The court also addressed the policy reasons behind the presumption of competence, stating "[t]here is a sound practical reason" why challenges to a VA examiner's qualifications "must set forth the specific reasons why the litigant concludes the expert is not qualified to give an opinion."[55] "Unless there is such particularization," the court said, "the trier of facts is unable to evaluate and determine the validity of the challenge to the expert's qualifications."[56]

After *Bastien*, the Federal Circuit decided *Sickels*.[57] There, the appellant challenged the qualifications of a VA examiner without raising his concern to the Board, arguing the Board's duty to provide reasons or bases for its decision required the Board to affirmatively explain why it found a particular examiner competent.[58] The Court, applying *Rizzo*, held that "[w]hile we did not explicitly state so in *Rizzo*, it should be clear from our logic that the Board is similarly not

---

[50] *Id.* at 1291.

[51] *Id.* at 1292.

[52] 599 F.3d at 1301.

[53] *Id.* at 1306.

[54] *Id.*

[55] *Id.* at 1307.

[56] *Id.*

[57] 643 F.3d at 1362.

[58] *Id.* at 1365-66.

mandated . . . to give reasons and bases for concluding that a medical examiner is competent unless the issued is raised by the veteran."[59] "To hold otherwise would fault the Board for failing to explain its reasoning on unraised issues."[60] Finally, the court instructed that "when a veteran suspects a fault with the medical examiner's qualifications, it is incumbent upon the veteran to raise the issue before the Board."[61]

The Federal Circuit had occasion to address the presumption of a VA examiner's competence yet again in *Parks*.[62] There, the court explained that "[v]iewed correctly, the presumption is not about the person or a job title; it is about the process."[63] The presumption "exists, of course, to eliminate the burden to produce evidence."[64] "Repeated unnecessary remands for additional evidence," the court said, "complicate many cases and lead to system-wide backlogs and delays."[65] And "[r]equiring the Board to present extensive evidence on the competence of a professional presumed to be competent is not only illogical, but adds to those delays."[66]

The court explained that "[t]he first step to overcoming the presumption is to object even where, as here, the veteran is acting *pro se*."[67] Then, "it may be necessary for the veteran to provide information to overcome the presumption."[68] "The regulations may require inquiry beyond the possession of a particular degree, or the lack of one."[69] The focus is on "some nexus between qualification and opinion."[70] But like the claimants in all the cases we have discussed, the appellant in *Parks* did not object. Rather, he never challenged the examiner's qualifications before the Board, instead arguing with non-lawyer assistance that the Board should not consider the examiner's

---

[59] *Id.* at 1366.

[60] *Id.*

[61] *Id.* at 1365.

[62] 716 F.3d at 581.

[63] *Id.* at 585.

[64] *Id.*

[65] *Id.*

[66] *Id.*

[67] *Id.*

[68] *Id.*

[69] *Id.*

[70] *Id.*

opinion because, contrary to VA's standard procedures, a physician had not signed it.[71] Despite the appellant's pro se status, the court still held he was required to raise some objection to the Board first before pro se litigants' special considerations come into play.[72]

*Parks* was expansive, speaking in broad strokes that suggested a bright-line application of the presumption of competence. But it did not take long for a case to come along that presented an exception. And in *Wise v. Shinseki*, this Court recognized just that.[73] There, the appellant never challenged a VA examiner's qualifications before the Board.[74] Nonetheless the Court held an objection before the Agency was not required because in her opinion the examiner expressly called her own qualifications into question.[75] The examiner explained she had "no formal training or background" in psychiatry, calling her opinion on psychiatric matters "a relative lay[]person's perspective."[76] The Court found it "unreasonable to allow the Board to ignore this explicit denial of expertise," holding that

> where, as here, a medical professional admits that he or she lacks the expertise necessary to provide the opinion requested by the Board . . . the opinion itself creates the appearance of irregularity in the process resulting in the selection of that medical professional that prevents the presumption of competence from attaching, and the Board must therefore address the medical professional's competence before relying on his or her opinion.[77]

*Wise* thus recognized a limited exception to the requirement that claimants expressly challenge VA's selection of a medical examiner before the Board, relieving them of this obligation where there are facially obvious issues of competence. It is this exception into which the appellant hopes to fit.

Finally, the Federal Circuit recently considered the presumption of competence again in *Francway*.[78] There, the claimant failed to challenge before the Board VA's selection of an internist

---

[71] *Id.* at 586.

[72] *Id.*

[73] 26 Vet.App. at 517.

[74] *Id.* at 526.

[75] *Id.* at 527.

[76] *Id.* at 525.

[77] *Id.* at 527.

[78] __ F.3d __, 2019 WL 3294051.

to perform a back examination.[79] Instead, just like the appellant here, he sought to do so before this Court in the first instance.[80] But the court explained that "[t]he presumption of competency requires nothing more than is required for veteran claimants in other contexts—simply a requirement that the veteran raise the issue."[81]

"[O]nce [a] veteran raises a challenge to the competency of a medical examiner," the court said, "the presumption has no further effect, and, just as in typical litigation, the side presenting the expert (here the VA) must satisfy its burden of persuasion as to the examiner's qualifications."[82] But the court also explained that claimants' burden of rebutting the presumption must be offset by "the ability to secure from the VA the information necessary to raise the competency challenge."[83] Thus, once a claimant requests information about an examiner's qualifications, he or she "has the right, absent unusual circumstances, to the curriculum vitae and other information about qualifications of a medical examiner. This is mandated by the VA's duty to assist."[84] The *Francway* court, however, expressly declined to "address the applicability of the presumption of competency in cases," such as *Wise*, "where the veteran did not challenge the examiner's competency, but the record independently demonstrates an irregularity in the process of selecting the examiner."[85] Moreover, the court did not find any irregularity suggested by the fact that the Board asked for an opinion from "an appropriate medical specialist." The Federal Circuit saw "no reason to distinguish between how the presumption applies to 'general' medical examiners as compared to 'specialists.' The presumption is that VA has properly chosen an examiner who is qualified to provide competent medical evidence in a particular case absent a challenge by the veteran."[86]

### B. Application to the Instant Appeal

*Wise* was an odd case, seemingly ripped straight from a law school textbook. There, the traditional policy concern behind the presumption—requiring the production of evidence about an

---

[79] *Id.* at *1.

[80] *Id.*

[81] *Id.* at *3.

[82] *Id.*

[83] *Id.*

[84] *Id.* at *4.

[85] *Id.* at *3 n2.

[86] *Id.* at *4.

examiner's qualifications before those qualifications have even been challenged—was not present because the examiner herself explicitly called her own qualifications into question; her qualifications were not attacked post hoc.[87] Thus, there was no need for additional evidentiary production; the record itself raised the issue of competence, compelling the Board to address it.

Here, we have no such explicit admission of incompetence or anything in the record that, as the Federal Circuit described *Wise* in *Francway,* "independently demonstrates an irregularity in the process of selecting the examiner."[88] Instead, the appellant argues a prior judicial finding regarding VA's chosen examiner, Dr. Wilhelm, and several news articles on Dr. Wilhelm's supervising other physicians' improperly administered examinations, are close enough to the facts in *Wise* such to excuse his failure to challenge Dr. Wilhelm's competence at the Board. They are not close enough, and so we will not excuse the failure.

On the one hand, the Federal Circuit has made clear the presumption of competence requires veterans to object to an examiner's qualifications before doing so in this Court.[89] On the other, the Board cannot ignore facially obvious issues of competence.[90]

In this appeal, however, we cannot reach that question. The documents the appellant relies on to attack Dr. Wilhelm's competence are beyond this Court's ability to consider because " we are precluded by statute from considering any material which was not contained in the record of proceedings before the Secretary and the Board."[91] The appellant fully admits he did not provide the documents to the Board or otherwise inform it of their existence. And he makes no argument about why these documents could constructively be considered a part of the administrative record. And even if it were our place to make arguments for him, we can think of no reason that these records would have been constructively before the Board. Thus, we return to the default rule that the appellant needed to object to Dr. Wilhelm's competence before the Board before doing so here.[92] Because he failed to do so, the Board's reliance on Dr. Wilhelm's opinion was not clearly

---

[87] 26 Vet.App. at 527.

[88] __ F.3d at __, 2019 WL 3294051, at *3 n2.

[89] *See Parks*, 716 F.3d at 585.

[90] *See Wise*, 26 Vet.App. at 525.

[91] *Id.* at 612 (citing 38 U.S.C. § 7252(b)); *see also Kyhn v. Shinseki*, 716 F.3d 572 (Fed. Cir. 2013).

[92] *See Parks*, 716 F.3d at 585.

11

erroneous because in the absence of an objection from the appellant the record contained nothing to raise the issue of his competence.

The appellant makes several arguments about whether Dr. Wilhelm's litigation history and the extra-record documents he has submitted are sufficient to rebut the presumption of competence. But for purposes of constituting the record on appeal, these records would not be constructively before the Board. In *Bell v. Derwinski*, the Court held that if (1) "items were clearly generated by" VA or the "item was submitted to the VA by appellant as part of [the] claim and (2) the documents predate the Board opinion on appeal, then the evidence was before the Secretary and could properly be considered part of the record on appeal.[93] The proper inquiry is whether the documents proffered by the appellant (1) are within the Secretary's control and (2) could reasonably be expected to be a part of the record. In this case, even if Dr. Wilhelm's employment records were within the Secretary's control, they would not be part of the appellant's claims file, nor would Dr. Wilhelm's personnel records "reasonably be expected" to be part of the record on appeal. Nor does the Board's request for an opinion "by an appropriate examiner (preferably a hepatologist)" alter this conclusion.[94]

It is worth noting that, as the Secretary recognized at oral argument,[95] if the appellant had properly submitted these documents to the Board, the Board likely would have been required to discuss them, even if the appellant had not expressly raised the argument.[96] The Secretary's concession is consistent with the Federal Circuit's comment in *Francway* that the *Wise* exception is not limited to the precise facts of that case but also concerns those parts of the record that "independently demonstrate[] an irregularity in the process of selecting the examiner."[97] Given the facts here, we have no occasion to say more on this subject, just as the Federal Circuit did not in *Francway*.[98]

---

[93] 2 Vet.App. 611, 612-13 (1992).

[94] As *Francway* recently clarified, the presumption of competence applies to VA's selection of "specialists" just as much as "general" medical examiners. __ F.3d at __, 2019 WL 3294051, at *4.

[95] *See* Oral Argument at 31:52-32:24, https://www.uscourts.cavc.gov/documents/Fears17-2345.mp3.

[96] *See Robinson v. Peake*, 21 Vet.App. 545. 552 (2008); *Urban v. Principi*, 18 Vet.App. 143, 145 (2004); *Brannon v. West*, 12 Vet.App. 32, 35 (1998).

[97] *Francway,* __F.3d at __, 2019 WL 3294051, at *3 n2.

[98] *Id.*

In sum, this case involves a straightforward application of existing precedent. The appellant failed either to request information about the examiner's qualifications to explore his competence[99] or to object to the examiner's qualifications before the Board as required by *Cox* and its progeny. He can escape defeat only if the facts of this case rise to the level of those found sufficient to rebut the presumption without objection in *Wise*. The only documents he has submitted were neither actually nor constructively before the Board, and so we cannot consider them. Thus, because the appellant's argument has no merit under even the most liberal reading of our decision, we need not precisely define the outer boundaries of *Wise*.[100]

## C. Other Arguments

The appellant also argues the Board failed to ensure substantial compliance with its May 2014 remand order.[101] This error, he contends, stems from a scrivener's error on the part of the RO in a document concerning missing records, in which the RO stated that it had found no records for "Robert M. Marx."[102] We find no merit in this argument.

First, it is apparent from the face of the document that it concerned the appellant. Specifically, the document listed the relevant veteran as "Stenson Fears" as well as the appellant's correct claim and Social Security numbers.[103] Second, the facility VA requested records from properly sent records for the appellant.[104] Thus, this argument is without merit as the appellant fails to show (or even allege) how this error is prejudicial.[105] And we can think of no reason why it would be.

---

[99] *See Nohr v. McDonald*, 27 Vet.App. 124, 132-33 (2014).

[100] The appellant attempted to raise new arguments in his December 10, 2018, motion for panel review, but we do not consider them because arguments not presented in an opening brief are deemed forfeited on appeal. *See Pederson v. McDonald*, 27 Vet.App. 276, 283 (2015) (en banc).

[101] Appellant's Brief (Br.) at 13-14; *see also Stegall v. West*, 11 Vet.App. 268, 271 (1998); *Dyment v. West*, 13 Vet.App. 141, 146-47 (1999).

[102] *See* Appellant's Br. at 13-14; R. at 608. The appellant did not raise the issue of Dr. Wilhelm not being a hepatologist. Thus, we consider that argument waived. *See Pederson,* 27 Vet.App. at 283.

[103] *See* R. at 608.

[104] *See* R. at 701-04.

[105] *See Hilkert v. West*, 12 Vet.App. 145, 151 (1999) (en banc), *aff'd per curiam*, 232 F.3d 908 (Fed. Cir. 2000) (table); *see also Hernandez v. Starbuck*, 69 F.3d 1089, 1093 (10th Cir. 1995) (noting that the courts of appeal are "not required to manufacture appellant['s] argument").

Finally, in an April 2011 Supplemental Statement of the Case, an RO found that "hepatitis A is denied because the infection completely resolved without residual."[106] This statement referred to the findings of a January 2011 VA examiner.[107] Appellant contends that statement amounts to a favorable factual finding conceding that he, at one time, had a hepatitis A infection. But the Board found that examination inadequate,[108] and, in any event, is not bound by the RO's determinations, even favorable ones.[109] So, this argument, too, is without merit.

### III. CONCLUSION

The Board's April 6, 2017, decision is AFFIRMED.

---

[106] R. at 620.

[107] R. at 668-77.

[108] R. at 4.

[109] *See McBurney v. Shinseki*, 23 Vet.App. 136, 139 (2009); *Anderson v. Shinseki*, 22 Vet.App. 423 (2009).